IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| **PRISON LEGAL NEWS**, a project of the HUMAN RIGHTS DEFENSE CENTER,<br><br>*Plaintiff*,<br><br>v.<br><br>**JAMES "J.J." JONES**, Sheriff of Knox County, Tennessee, in his official and individual capacities; **RODNEY BIVENS**, Assistant Chief Deputy of the Knox County Sheriff's Office, in his official and individual capacities; and **KNOX COUNTY, TENNESSEE**,<br><br>*Defendants*. | Case No.: _____<br><br><br><br><br><br><br><br><br><br><br><br>JURY DEMAND |

## DECLARATION OF PAUL WRIGHT IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Paul Wright, declare the following under penalty of perjury:

1. I have personal knowledge of the matters set forth herein, and if called as a witness, I could and would competently so testify. I make this declaration in support of Plaintiff's Motion for Preliminary Injunction.

2. I am the founder and editor of *Prison Legal News* ("PLN"), a project of the Human Rights Defense Center ("HRDC"). HRDC is a non-profit, IRS section 501(c)(3) corporation located in Florida. The core of our mission is public education, advocacy and outreach on behalf of, and for the purpose of assisting, prisoners who seek legal redress for infringements of their constitutional and human rights.

3. I have received numerous awards for my work with HRDC and PLN, including

the Petra Foundation Award in 2005, the Washington Coalition for Open Government's James Madison Award in 2007, the National Lawyers Guild's Arthur Kinoy Award in 2008, and the City University of New York Law School's Distinguished Public Service Award in 2011. In 2013, I accepted the First Amendment Award from the Society of Professional Journalists on behalf of Human Rights Defense Center for our work with *Prison Legal News.*

4. *Prison Legal News* has been continuously published since 1990 and since that time over one million copies have been distributed. Currently, *Prison Legal News* has thousands of subscribers in the United States and abroad, including prisoners, attorneys, journalists, libraries, judges, and members of the general public. *Prison Legal News* is distributed to prisoners in approximately 2,600 correctional facilities across the United States, including the Federal Correctional Institute, Memphis and other institutions within the Federal Bureau of Prisons, as well as prisons within the correctional systems of all 50 states. *Prison Legal News* also is distributed to death row units and "supermax" prisons, including the federal Administrative Maximum Facility ("ADX" or "Supermax") at Florence, Colorado - the most secure prison in the United States.

5. Sending publications and correspondence through the mail to prisoners is essential to accomplishing the mission of PLN and HRDC. The primary aim is to communicate with incarcerated persons about developments in the law and protection of one's health and personal safety while in prison or jail. *Prison Legal News* relies on its ability to send publications through the mail to communicate with prisoners, and cannot communicate with prisoners without use of the mail.

6. Each issue of *Prison Legal News* covers recent events and judicial decisions that affect prisoners' lives and legal cases. Therefore, the ability to deliver issues of *Prison Legal News* quickly – before the news becomes stale, or prisoners' deadlines for court filings expire – is critical to our mission. If we are not able to deliver issues to a prisoner on a timely basis, we lose a precious opportunity to help that prisoner. In addition, many prisoners move in and out of correctional facilities quickly, and if we lose the opportunity to communicate with the prisoner

for some period of time, we may not be able to locate that prisoner again to provide him or her with assistance.

7. Over the past twenty-five years, we have distributed over one million copies of *Prison Legal News*, thousands of brochure packets, and thousands of copies of judicial decisions. While some of these were sent to subscribers in the free world, the vast majority of these copies were delivered to incarcerated persons. I have never heard of any of these items interfering with a correctional facility's penological interests. In particular, I have never heard of any security incidents caused by our monthly journal *Prison Legal News*, by our brochure packets, subscription renewal letters, fundraisers, copies of case law, books, or other PLN correspondence.

8. To better reach incarcerated individuals with correspondence and publications, I have developed substantial expertise regarding the mail and correspondence policies of correctional facilities across the country. Since publication began twenty-five years ago, I have carefully monitored all instances in which a jail or prison refused to deliver mail from *Prison Legal News*.

9. Jail policies that limit mail to postcards negatively impact PLN's ability to correspond with inmates and fulfill its mission to provide information and assistance to prisoners who seek legal redress for infringements of their constitutional and human rights. Additionally, some of PLN's contributing writers are themselves prisoners. These incarcerated writers provide, among other things, analysis of recent court decisions and other legal developments for publication in PLN. In order to generate such content, PLN sends source documents such as recent court decisions, settlement agreements, and investigative reports to prisoners, in order for them to write articles for publication. The postcard-only mail policy forecloses this avenue of communication and impedes PLN's ability to publish its magazine by making the delivery of these source documents impossible.

10. Starting in November 2014, Defendants began censoring PLN's: (1) Informational Brochure Packet; (2) Enveloped Mail; (3) 2014 Annual Fundraising Packet; (4)

Copies of the monthly publication *Prison Legal News*; and (5) books published or distributed by PLN. I am aware of at least 147 items of correspondence being censored by Knox County jails between from November 2014 and the present, described further below. PLN has never been provided any opportunity to appeal the jail's refusal to deliver its publications and other correspondence.

11. PLN's correspondence and publications were never delivered to prisoners, and no notice of the censorship or opportunity to appeal was afforded to PLN. PLN is unaware of how or in what manner Defendants disposed of these items.

## Censorship of PLN's Monthly Journal

12. HRDC and PLN publish an award-winning 72-page monthly journal entitled *Prison Legal News*. This journal provides information about legal issues, including access to courts, disciplinary hearings, prison conditions, excessive force, mail censorship, prison and jail litigation, visitation, telephones, religious freedom, prison rape, and the death penalty. Knox County jails' mail policy does not allow publications to be mailed to prisoners. Plaintiff's monthly journal, *Prison Legal News*, consequently, is not allowed in the jails, and has been censored on at least 111 separate occasions since November 2014. A true and correct copy of the August 2015 issue of *Prison Legal News* (one of the issues that were censored in this case) is attached hereto as **Exhibit A-1**. The jails did not provide PLN with any due process notice or with an opportunity to appeal the aforementioned censorship decisions.

## Censorship of PLN's Books

13. HRDC also is a book distributor, specializing in books and materials regarding prisoners' rights and issues related to the criminal justice and corrections systems. HRDC distributes approximately fifty (50) legal and self-help books, some published by HRDC and some by other publishers. These books foster in readers a better understanding of criminal justice policies, and allow prisoners to educate themselves about related issues, such as legal research, writing business-related letters, health care, and similar topics.

14. This restriction has effectively prevented PLN from sending *The Habeas Citebook: Ineffective Assistance of Counsel*, written by Brandon Sample. *The Habeas Citebook: Ineffective Assistance of Counsel*, assists inmates with the procedural and substantive complexities of federal habeas corpus litigation and ineffective assistance of counsel claims. *The Habeas Citebook: Ineffective Assistance of Counsel* is regularly delivered to prisoners across the country, including prisoners housed in the Federal Correctional Institute, Memphis, and in county jails across the nation. I have never heard of any security incidents caused by providing prisoners with this book.

15. This book has been censored on at least 12 occasions since November 2014. A true and correct copy of the front and back cover of the book, and its table of contents is attached hereto as **Exhibit A-2**. The jail did not provide PLN with any due process notice or with an opportunity to appeal the aforementioned censorship decisions. Moreover, other books not published or distributed by PLN, but equally important to prisoners would similarly be rejected by Knox County jails under its mail policy.

16. The broader ranging consequences of this policy are significant. Books, such as *The Habeas Citebook: Ineffective Assistance of Counsel*, provide invaluable information to prisoners to help them navigate the legal system, understand their constitutional rights, and/or educate or provide direction to prisoners seeking correspondence programs, GED instruction, or effective writing skills – all of which help prisoners prepare themselves for a productive life beyond bars, or otherwise provide a constructive use of time. Moreover, PLN employees cannot communicate such speech through telephone, email or in-person visits as it would neither be practical nor cost effective means by which to communicate the complex content in these books.

### Censorship of 2014 Fundraiser

17. Each year, PLN sends and annual Fundraiser to its subscribers. A true and correct copy of the fundraiser is attached hereto as **Exhibit A-3**. The Fundraiser was censored on at least 12 occasions since November 2014.

### Censorship of PLN's Informational Brochure Packets

18. In addition to its monthly journal, PLN sends prisoners an "Informational Brochure Packet," which includes three items: (1) a Brochure and Subscription Order Form; (2) a *Prison Legal News* Book List; and (3) a Published Books Brochure. These brochures are sent directly to individually-named inmates, some who have requested information about PLN publications and others identified by PLN as potential subscribers. The Informational Brochure Packet was censored by Knox County jails on least 12 occasions since November 2014. A true and correct copy of the Informational Brochure Packet is attached hereto as **Exhibit A-4**, along with representative samples of the return mail packaging for informational brochure packets with notations or ink stamps made by the jails as described above.

## Past PLN Cases

19. PLN has challenged the censorship policies of a number of jail and prison facilities through litigation. As a result of those experiences, I have become very familiar with the policies and practices of mailrooms in a number of correctional facilities. It is my experience that correctional facilities often use restrictive mail policies as a pretext to keep out publications and correspondence that administrators do not want to distribute to prisoners. In my experience, some correctional administrators prefer not to deliver *Prison Legal News* to prisoners in their custody because the publication provides prisoners with information about their legal and human rights, and how to exercise those rights using the judicial system.

20. We have challenged postcard-only policies in several other jurisdictions. Recently on May 7, 2015, in *Prison Legal News v. San Diego County, et al.*, Case No., 3:14-cv-02417-L-NLS (S.D. Cal.), the Court enjoined the postcard-only policy finding that Defendants failed to provide an explanation why a postcard-only policy is more effective at preventing the introduction of contraband than opening envelopes and inspecting their contents.

21. Courts have also granted preliminary injunctions against other correctional facilities in similar situations. For example, in September 2014, in *Prison Legal News v. Lewis County, et al.*, Case No., 14-cv-05304 (JRC) (W.D. Wash.), the Court entered a preliminary injunction against Lewis County jail finding that "[t]he postcard-only policy drastically reduces

prisoners' and other correspondents' ability to communicate...[i]t is more than a mere inconvenience and becomes a substantial barrier to First Amendment rights." In June 2014, in *Prison Legal News v. County of Ventura, et al.*, Case No., 14-0773-GHK (EX) (C.D. Cal.), the Court entered a preliminary injunction preventing the Ventura County jails from restricting incoming mail to postcards. *See Prison Legal News v. Cnty. of Ventura*, 2014 WL 2736103 (C.D. Cal. June 16, 2014). The parties later entered into a stipulated permanent injunction rescinding the postcard-only policy.

22. Our organization operates with very limited resources and on a very tight budget. At present, we have approximately thirteen employees. As a charitable organization with virtually no financial resources, we would likely be unable to post a bond, except a bond in a nominal amount.

I declare under penalty of perjury under the laws of the United States and the State of Florida that the foregoing is true and correct, and that this declaration is executed at Lake Worth, Florida this 2nd day of October 2015.

Paul Wright