IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| **PRISON LEGAL NEWS**, a project of the HUMAN RIGHTS DEFENSE CENTER,<br><br>*Plaintiff*,<br><br>v.<br><br>**JAMES "J.J." JONES**, Sheriff of Knox County, Tennessee, in his official and individual capacities; **RODNEY BIVENS**, Assistant Chief Deputy of the Knox County Sheriff's Office, in his official and individual capacities; and **KNOX COUNTY, TENNESSEE**,<br><br>*Defendants*. | Case No. 3:15-cv-452<br>Chief Judge Varlan<br>Magistrate Judge Shirley |

**PLAINTIFF'S MOTION AND MEMORANDUM
FOR ATTORNEYS' FEES, COSTS AND EXPENSES**

As the representative of the prevailing party in this litigation, Counsel for Plaintiff, *Prison Legal News* ("PLN"), respectfully move this Court under 28 U.S.C. § 1988 and other authority for an award of attorneys' fees, costs, and expenses in the amount of **$127,451.76**. Plaintiff is the prevailing party in the litigation and has exercised sound billing judgment in reviewing the time records submitted in this cause. The grounds for this award are set forth herein.

## I. Introduction

PLN is a not-for-profit project of the Human Rights Defense Center, which publishes a monthly, 72-page journal of corrections news and analysis by the same name: *Prison Legal News*. (*See* ECF 3, Ex. A – Decl. of Paul Wright, ¶¶ 2, 12). PLN also publishes books about the criminal justice system and legal issues affecting prisoners and distributes approximately 50 legal and self-help books to prisoners and the public. *Id.*

At the start of this litigation, Defendants had a formal and informal postcard-only policy, requiring all incoming mail addressed to prisoners at the Knox County Jail ("Jail"), with the exception of legal mail, to be in the form of a "standard" postcard. Defendants' written policy on prisoner mail also effectively banned publications sent by mail to prisoners that did not fit on a "standard" postcard. *See* ECF 3, Ex. B – Policy 12.2. Defendants' written mail policy also banned all gift publications sent by third parties—including publishers—to prisoners, regardless of whether the publication is sent directly from the publisher to the prisoner. *Id.* at § (III)(K). Additionally, the Jail restricted delivery of books to prisoners unless they were sent from private donors/sources to the Library Unit, and even then, were subject to a very narrow size restriction of 6" x 9." *See* ECF 3, Ex. C – Inmate Handbook, at 9. Moreover, Defendants' policy failed to require or afford any notice to the publisher or other sender (like PLN) of incoming or outgoing mail when their

mail was censored. *See* ECF 3, Ex. A., Wright Decl., at ¶¶ 10-11; Ex. B., at § (III)(A). Further, the Inmate Handbook contained no appeal procedure for either the prisoner-addressee or the non-incarcerated sender. *Id.*, at ¶¶ 10-11.

Since November 2014, PLN mailed its monthly journal, informational brochures, fundraising packets, subscription renewal letters, and books by U.S. Mail to individual addressed prisoners at the Jail. *See* ECF 3, Ex. A, Wright Decl., at ¶ 10. However, the jail censored all the items that PLN mailed to multiple prisoners. *Id.* at ¶¶ 11, 12, 15, 17-18; Ex. E, Brown Decl., at ¶¶ 7-8; Ex. F, Davis Decl., at ¶¶ 7-8; Ex. G, Barner Decl., at ¶¶ 7-8. Defendants did not notify PLN of any procedure for challenging rejection decisions or even give PLN a reason for the rejections. *Id.* In all, Defendants censored at least 111 issues of the *Prison Legal News* journal, and informational brochure packets, subscription renewal letters, books, and fundraising packets (totaling 147 items) without affording PLN due process. *Id.* at ¶¶ 10-11, 14-15, 17-19.

Consequently, on October 6, 2015, PLN filed suit against Defendants for their violation of its First and Fourteenth Amendment rights, along with a Motion for Preliminary Injunction. *See* ECF 1-3. Defendants also filed a Motion to Dismiss the official capacity claims against Defendants, to which PLN opposed. *See* ECF 21. Defendants withdrew their Motion to Dismiss thereafter, and responded to Plaintiff's Motion for Preliminary Injunction and filing an Answer to the Complaint

denying any wrongdoing. *See* ECF 25, 26. Defendants also filed a counterclaim seeking a declaration from the Court that it had a valid defense to Plaintiff's claims. *See* ECF 25. After full briefing on the preliminary injunction motion and other pending motions, the parties agreed to attend private mediation and to stay discovery in the cause. *See* ECF 32-34. Furthermore, the Court in its order staying the case also denied all pending motions with leave to re-file upon lifting of the stay. *See* ECF 42. Mediation was held on April 8, 2016 but the parties were unable to reach an agreement. *See* ECF 37. Accordingly, the parties held a Rule 26(f) conference on April 14, 2016 and commenced discovery into the breath and scope of the censorship. *See* ECF 43.

Soon thereafter, on October 13, 2016, Defendants filed an Amended and Restated Answer to the Complaint. *See* ECF 46. Defendants' Amended and Restated Answer included an Admission of Liability by Knox County "individually and collectively with its official policy-makers Sheriff J. J. Jones and Chief Rodney Bivens in their official capacity…" *Id.* at 2. Knox County also acknowledged that it is "liable to Plaintiff under 42 U.S.C. §§ 1983 and 1988 for the implementation of its post-card only policy" and has indicated that it has "returned to the practice of allowing paper publications." *Id.* at 2-3. Knox County has also reverted to a previous policy which allows "[c]ommunication, to and from inmates, through letters or postcards", without restricting correspondence to postcards of a certain size

4

only. *Id.* at Ex. 1. Defendants further admit that in response to this litigation they "amended and revised [their] written policies to provide notice to the sender of any decision censoring publications, an opportunity to be heard, and for administrative and judicial review under the Tennessee Administrative Procedures Act. *Id*. Lastly, Defendants admit liability as to Plaintiff's claim that it was denied equal protection under the law when Defendants allowed some publications into the Knox County Jail to the exclusion of all others, including those sent by PLN. *Id.* at 13.

On June 26, 2017, the parties filed a stipulation on damages in the amount of $25,000.00. *See* ECF 48. Accordingly, given Defendants' admission of liability as to Plaintiff's free speech, due process and equal protection claims, as well as the stipulation on damages, the only matters left in dispute was injunctive relief, attorneys' fees, costs and expenses. Thus, contemporaneous to the stipulation on damages, Plaintiff filed a Motion for Permanent Injunctive Relief. *See* ECF 49. The grounds for the injunctive relief rested solely on the issue of whether Defendants' voluntary cessation of their unconstitutional conduct mooted Plaintiff's equitable claim such that the "allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). In response, Defendants' filed a Motion to Compel Settlement Conference and a Motion to Treat PLN's motion seeking injunctive relief as an Amended Complaint, to which PLN filed responses opposing both. *See* ECF 50-53.

The Court subsequently denied Defendants' request to treat the motion as an Amended Complaint. *See* ECF 56. Then, Defendants filed a Motion for Summary Judgment which also included a Response to Plaintiff's Motion for Permanent Injunction. *See* ECF 58. Three days later, and before the Court could rule on Defendants' Motion for Settlement Conference, Defendants filed a Renewed Motion for Settlement Conference citing the same grounds as its initial motion. *See* ECF 59. PLN accordingly filed responses to Defendants' summary judgment motion, its opposition to the permanent injunction, and renewed Motion for Settlement Conference. *See* ECF 62, 64. Ultimately, the Court denied Defendants Motion for Summary Judgment and its requests for settlement conferences, as well PLN's Motion for a Permanent Injunction, giving rise to the instant Motion for Attorneys' fees, costs and expenses. *See* ECF 65, 67.

## II. <u>Legal Discussion</u>

This Court is empowered to award reasonable attorneys' fees and expenses to prevailing parties in civil-rights actions brought under section 1983. *See* 42 U.S.C. § 1988(b). The statutory presumption is that absent "special circumstances" that would render such an award "unjust," a prevailing party under 42 U.S.C. § 1988 "must" be awarded attorneys' fees and expenses. *See Indep. Fed. of Flight Attendants v. Zipes*, 491 U.S. 754, 760-61 (1989) (holding that "in absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing

plaintiff") (emphasis in original); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (internal quotation marks omitted).

There can be no dispute that Plaintiff is a prevailing party entitled to fees and costs pursuant to 42 U.S.C. 1988 for prevailing at trial court as to the factual liability against the Defendants. *See, e.g.*, *Hensley,* 461 U.S. at 433. Additionally, the fact that Plaintiff did not obtain injunctive relief on its claims, does not diminish its right to receive an award for all reasonable time expended. Indeed, Plaintiff effectively ended the unconstitutional policies at issue. *Id.* at 434. Work on an unsuccessful claim cannot be considered to have been "expended in pursuit of the ultimate result achieved" where the plaintiff has presented distinctly different claims for relief based on different facts and legal theories. *Id.* at 435. But where the plaintiff's claims for relief involve common facts or related legal theories, such that much of counsel's time will have been devoted generally to the litigation as a whole, courts have held that there should be no reduction of requested fees. The Supreme Court explained in *Hensley* that:

> [m]any civil rights cases will present only a single claim. In other cases the Plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the

7

significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Hensley,* 461 U.S. at 435. *See also Thurman v. Yellow Freight Sys.,* 90 F.3d 1160, 1169 (6th Cir. 1996) ("When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys' fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.").

In this matter, even though Plaintiff did not receive injunctive relief, the claim is from a common nucleus of facts. The common nucleus of facts are whether Defendants policies denying prisoners enveloped mail, books and magazines, requiring all mail to be in the form of a postcard, and having no due process protections violated Plaintiff's (and indeed all senders of mail) constitutional rights. Defendants' admitted it violated Plaintiff's First and Fourteenth Amendment claims, and even though no injunctive relief was granted, Plaintiff's lawsuit effectively engendered Defendant to revise its policies to conform to constitutional principles. Nevertheless, as discussed *infr*a, Plaintiff's counsel exercised billing judgment by removing <u>all</u> time expended on the lawsuit subsequent to the Court's entry of a stipulated judgment on damages.

Accordingly, there is good reason for awarding fully compensatory fees to prevailing plaintiffs in civil-rights lawsuits: the award of fully compensatory fees is necessary to ensure adequate access to the justice system. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see also Perdue v.*

Case 3:15-cv-00452-TAV-CCS   Document 68   Filed 01/16/18   Page 8 of 15   PageID #: 1382

*Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1676 (2010) ("Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights."). The continued vitality of such access requires that the attorneys who risk undertaking these cases be fully compensated for their services. As a result, a reasonable fee under § 1988 is "one that grants the successful civil rights plaintiff a 'fully compensatory fee,' comparable to what 'is traditional with attorneys compensated by a fee-paying client.' " *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (internal citations omitted). Thus, all that remains for this Court is to determine the reasonableness of the fees sought.

### a. **The amount of attorneys' fees sought is reasonable**

This Court has substantial discretion in determining the reasonable fee. "It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). An award of attorneys' fees is reviewed for an abuse of discretion on appeal. *Reed v. Rhodes*, 179 F.3d 453, 469 n.2 (6th Cir. 1999).

The first step in determining a reasonable fee is to calculate the so-called "lodestar" by multiplying (i) the number of hours reasonably expended on the litigation by (ii) a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A strong presumption exists that the lodestar represents a reasonable fee. *Blanchard*

*v. Bergeron*, 489 U.S. 87, 95 (1989). Notably, §1988 does not require attorneys' fees to be in proportion to the amount of damages recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 580-81 (1986). Reasonable attorneys' fees should compensate the work of paralegals and law clerks, in addition to the work of attorneys. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285-86 (1989).

### i. The hours expended are reasonable

The first lodestar prong is whether the hours expended on the lawsuit are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials." *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 (2d Cir. 2006). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . . Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (internal quotation marks omitted) (emphasis in original). Counsel for Plaintiffs have met this standard.

Counsel for Plaintiffs seek payment for a total of 346.34 unpaid hours. The hours expended in this dispute are eminently reasonable. Counsel for Plaintiff who personally handled the case believes them to be reasonable. *See* Declaration of

10
Case 3:15-cv-00452-TAV-CCS   Document 68   Filed 01/16/18   Page 10 of 15   PageID #: 1384

Sabarish Neelakanta and Declaration of Tricia Herzfeld, attached hereto as Exhibits 1 and 2, respectively.

### ii. The requested hourly rates are reasonable

The second lodestar prong is that the requested hourly rates are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Whether an hourly rate is reasonable should be considered with reference to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market, i.e., 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation . . . .' " *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989).

The best indication of the "market" hourly rate for any given attorney is that attorney's actual established hourly rate at which he bills and collects from paying clients. *See Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 638 (6th Cir. 1979) ("In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney."); *see also Tomazzoli v. Sheedy*, 804 F.2d 93, 98-99 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly

11
Case 3:15-cv-00452-TAV-CCS   Document 68   Filed 01/16/18   Page 11 of 15   PageID #: 1385

rate customarily charged by counsel or by her law firm."); *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) ("What [an attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as 'determined by supply and demand.'").

The appropriate rate is each attorney's current hourly rate at the time of the fee petition, rather than the attorneys' historic hourly rates as they naturally increased over the course of the litigation. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989) (recognizing that "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed," and therefore holding that "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [section 1988]"); *see also Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). This requirement simply reflects the dual realities of inflation and the time value of money.

In sum, the grand total of **346.34** hours expended by Counsel and staff for Plaintiffs is reasonable, and the hourly rates charged are reasonable. Accordingly, the total "lodestar" fee of **$127,451.76** is presumptively reasonable. *See Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989). This Court should award no less than that amount to Counsel for Plaintiffs.

**b. The amount of costs and expenses is reasonable**

In the expense schedule, the Plaintiff indicates the expenses incurred to date. *See* Exhibit B to the Declaration of Sabarish Neelakanta, Exhibit 1. Section 1988 has been broadly interpreted by the courts to permit the prevailing party to recover, as an element of reasonable attorney's fees, a broad range of litigation expenses that normally are charged separately to fee-paying clients, and are not considered part of office overhead. Such recoverable expenses generally include postage, long-distance telephone calls, photocopying, transportation, food and lodging, Lexis or Westlaw research, messengers, depositions, transcripts, and express mail service. *Northcross v. Board of Education*, 611 F.2d 624, 639-40 (6th Cir. 1979), *cert. denied*, 447 U.S. 911 (1980). The holding in *Northcross* is still good law in the Sixth Circuit. Accordingly, Plaintiff is entitled to the costs and expenses in the amount of $8,553.26.

## III. CONCLUSION

As the representative of the prevailing party in this litigation, Counsel for Plaintiff respectfully moves this Court for an award of attorneys' fees, costs and expenses. The lodestar Attorneys' fee request of **$127,451.76** is eminently reasonable. It is the product of a reasonable number of hours expended for the representation and reasonable hourly rates. Similarly, an award of $8,553.26 in

costs and expenses is also reasonable. By granting this motion, this Court's order will continue to serve the "important public purpose [of] making it possible for persons without means to bring suit to vindicate their rights." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1676 (2010).

Dated: January 16, 2018

Respectfully submitted,

s/Tricia Herzfeld
Tricia Herzfeld (BPR No. 26014)
Branstetter, Stranch & Jennings, PLLC
The Freedom Center
233 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203

/s/ Sabarish Neelakanta
Sabarish Neelakanta (Florida No. 26623)[1]
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, FL 33460
(561) 360-2523

*Attorneys for Plaintiff PLN*

## CERTIFICATE OF SERVICE

I, Sabarish Neelakanta, one of Plaintiff's attorneys, certify that I caused a copy of the foregoing document to be served by operation of the Court's Case Management/Electronic Case Files (CM/ ECF) system upon the following attorneys on January 16, 2018:

David S. Wigler
Deputy Knox County Law Director

---

[1] Admitted *pro hac vice*.

Suite 612, City-County Building
400 Main Street
Knoxville, TN 37902
(865) 215-2327

/s/ Sabarish Neelakanta
Sabarish Neelakanta (Fla. Bar No. 26623)
*Co-attorney for Plaintiff*